We'll move to our third case this morning, Charles Brumitt v. Sam Smith. Charles Brumitt v. Sam Smith Good morning, Your Honors, and may it please the Court, Counsel. This Court should reverse the Order of the District Court's denial of summary judgment that was filed by Sgt. Sam Smith because the Court erred in characterizing legal issues as disputes of material facts. There are no disputes as to the material historical facts of this matter, and Sgt. Smith is entitled to qualified immunity because his actions were objectively reasonable, and the District Court further erred when looking at the second prong of qualified immunity by drawing the clearly established right in an overbroad scope. To be sure, jurisdiction is secure in this matter because, simply put, the parties do not disagree on what happened, only whether it was reasonable. The Seventh Circuit precedent tells us that this Court has jurisdiction to handle this type of appeal so long as there are no questions as to the who, what, when, how, and why. Again, those are the circumstances we're faced with here. As the District Court framed the issues in denying summary judgment as whether a reasonable officer would have perceived Mr. Brumitt as unconscious in those two to three seconds, and also whether a reasonable officer would have had time to recalibrate his force in those two to three seconds. We know that reasonableness is a legal issue based on precedents of Dockery v. Blackburn and even going further back. We see suggestions of the Court starting to follow this path in the District Court order. Page 13 of the order says that in light of these facts and circumstances, the Court must determine whether Sergeant Smith's particular response was reasonable. And so we're here about reasonableness, which is an issue for the Court, and I think it might be helpful to illustrate the division of labor, so to speak, between the jury and the Court, especially in this case looking through the prison of time. Obviously, time is a big component of the facts here. We have the jury to answer the question, how much time passed in a certain relevant time period? And the Court's function is to adjudicate what is a reasonable amount of time or what is enough time. Here we don't need a jury to answer that question of how much time because the parties agree that Mr. Brummett struck Sergeant Smith in the face and Sergeant Smith responded with four strikes in two to three seconds. So having established that this matter is ripe for adjudication at the summary judgment Was the facts established as to how much force was used? Yes, Your Honor. So the facts in the record is that in response to Mr. Brummett's strike of Sergeant Smith, he responded with four punches that landed on Mr. Brummett's face. That's how many, but do we know the force that was used? There was a lot of question about, in particular from the record, from the findings of the District Court that suggested that determining how much force from this was used with each strike. I know there's some question as to whether or not it should be looked at all as one use of force or would each strike be its own separate? And so I'm questioning how was that determined because there was some question about when when did Mr. Brummett become subdued or when did he? Understood, Your Honor, and I think there's a couple things we can look at. As far as trying to quantify the force, Sergeant Smith does not dispute that there's enough force to cause serious injuries. That's in the record. When we turn to the issue of one use of force versus separate uses of force, I think the precedent has taught us that we look for natural breaking points when characterizing uses of force. So here there is a single use of force comprised of four strikes that happened in quick succession. And so to count that as separate uses of force under the timing and the circumstances would run afoul of precedent because, for instance, in issues of lethal force where firearms are individual gunshots, we measure, take that use of force as one, so to speak. So having established that disputes over material historical facts don't preclude jurisdiction or don't preclude the ability to enter judgment at the summary judgment stage, we look at qualified immunity. Did the parties agree factually as to when Mr. Brommett was subdued? Not. So the parties agreed that Mr. Brommett was subdued prior to the last punch. The issue we have to look at here is whether it was reasonable for Sergeant Smith not to process that Mr. Brommett was subdued prior to the last strike. We go to the precedent from Graham and his progeny that the court is not to second-guess the actions of law enforcement officers who are faced with split-second, rapidly-evolving circumstances. So that's why the key inquiry becomes, you know, the facts are established that Sergeant Smith did not realize that Mr. Brommett was subdued until after his last strike, and the court even stated that in its background facts section. So we look at... Is it a fact question, then, would a reasonable officer have known when he had become subdued before the fourth strike? I'm sorry, Your Honor, could you repeat that? Yes. Would it have, from a reasonable officer's perspective, would a reasonable officer have noticed that the individual, Mr. Brommett, had become subdued before the fourth strike? And so with that, we get into the meat of the qualified immunity analysis, which the plaintiff had the burden to overcome, and the plaintiff did not come forward with any clearly established case law that would have warned Sergeant Smith that his actions that night were unreasonable. Additionally, there is no argument that this is one of those cases where the conduct was so patently offensive that qualified immunity can be denied absence, particularized precedent that squarely governs the facts at issue. And I would add plaintiff's sides, Becker v. Elfreich and Johnson v. Scott, for his qualified immunity analysis, and I would just note, looking at those cases, say Sergeant Smith had read those cases prior to starting his shift that evening, those would not have put him on notice that what he ended up doing that evening was clearly unreasonable. And so for that reason, qualified immunity is appropriate. See, I'm getting close to my time. I'd like to reserve for a moment. That's fine. Thank you. Mr. Williams. Thank you, Your Honor. May it please the court, counsel, Joe Williams for the appellee, Charles Brommett. I want to start with something that my friend on the other side just mentioned about the We see that type of argument made in cases involving tasers and firearms and flashbang grenades because use of a taser can sometimes be appropriate and it can sometimes be constitutionally inappropriate. Same with a flashbang grenade, like we saw in the case of Escobedo. Sometimes it's appropriate, sometimes it's not. So officers need a particularized finding from this court to know if what I'm doing is constitutionally permissible. I have struggled for a long time trying to figure out how to make the clearly established right in this case any more particularized than you cannot continue to beat a subject who is unconscious because there is no circumstance. Well, that begs the question over whether any reasonable officer would have recognized that your client was unconscious and stopped hitting him. That's the right way to frame the question, whether it would have been readily apparent to any reasonable officer under these circumstances that that last punch was unconstitutional. And I think, Your Honor, the district court addressed the question in precisely that way and in fact said after the first punch, while it's difficult to discern, you can see Mr. Brommett with his face gone slack and his arms down at his side. But in 20-20 hindsight, watching the videotape in slow motion, not in the heat of this attack. I mean, the officer had been hit and he responded to remove the threat, as they say in police training, neutralize the threat. And the case law says that the officer is entitled to neutralize the threat and reasonable mistakes about how much force is necessary to neutralize the threat is what qualified immunity exists for. Qualified immunity does not exist, though, to protect people who do not pay attention enough to the force that they're using that they end up continuing to beat someone who's unconscious. How would he have possibly done that? Was he supposed to punch him and then stop and look and then hit him and wait to get hit in the face? What was he supposed to do here? I mean, I agree that the force was extensive here, but what was the officer supposed to do? Should he have tased him? What should he have done? If this would have been a one-strike case, I wouldn't have taken the case. I think the qualified immunity probably protects Sergeant Smith for that first punch. Does Sergeant Smith have to wait for a suspect to fight back? In other words, you can punch once, and then if the suspect doesn't hit the police officer in the face again, the police officer's got to stop. What do we tell police officers? What does our opinion say? Your opinion says that you have to monitor your force in such a way that you are paying attention so that you can... Let me round out this thought. I want to make sure this is practical, because some lawyer is going to have to explain to the police department, this is what you have to do. So tell me, how are you going to explain? This is what you're going to have to do tonight on your shift. So I want to answer that question by backing up and explaining why Sergeant Smith testified that he hit four times. He did not testify that he hit Chuck four times because the situation was so rapidly evolving that he did not have time to recalibrate his force. He testified that he hit Chuck four times because that's how he trains as a mixed martial arts fighter. So when he is sparring with other professional fighters, he trains in four punch combinations. The Constitution is not there to protect mixed martial arts training in fighting. It is there to protect the constitutional, clearly established right not to be subjected to force once you've already been subdued. So the rule that would emanate from this opinion, if we find in your favor, is that officers with mixed martial arts training can't inflict more than how many punches? Your Honor, I'm sorry, that's not, the reason I bring up the mixed martial arts is because he was not monitoring his force. What he was doing was acting instinctually as a competitive fighter, not as a police officer. Right, and maybe that was wrong, and maybe that's grounds for a state law tort claim. But this is a constitutional case, and he comes into court, the officer that is, protected by qualified immunity, which accounts for reasonable mistakes in judgment by police officers in the field, making split-second judgments in heated situations, and in this instance where he had just been hit. But I think this court would agree that if Sergeant Smith knew Mr. Brummett was unconscious and continued to punch him, he would not be protected by qualified immunity. I think, and maybe I'm wrong, but I think that that is the state of the law here, and so there is a question of fact as to whether a reasonable officer, not a mixed martial arts fighter, but a reasonable officer in that situation would have recognized that Mr. Brummett had gone slack after the first punch when he hits him three or four times. We're not talking about a case with a handgun in which pulls of the trigger happen right there. We're talking about someone who four punches, and the forethought that goes through with that. We don't want to live in a society where our police officers are protected, are entitled, because that's what immunity is, entitled to- No, it's a protection from liability for damages. No, it is. It's not an entitlement. That's the wrong way to think about it. Maybe it is the wrong way to think about it. That's an inflammatory way to think about it. But he would be allowed to do it without punishment? Without paying damages. Without paying, okay, without paying damages. It's not unconstitutional, in other words, or at least he's protected by immunity from the claim that it's unconstitutional. But I think that the trial court, when she parsed this record and watched the videotape, said that it is a question of fact as to whether a reasonable officer would have noticed. Remember, the video- That's the merits question. We're here on a qualified immunity appeal. It's a legal question about under the facts and the record as it comes to us, which has a videotape. There's body cam video that shows everything that happened. Your Honor, let me address- And it all happened in just a fraction of a couple of seconds. It was so fast. It happened in three seconds. And in the Smith v., I believe it's Hinckley case, this court said, of course videos are sometimes unclear, incomplete, and fairly open to varying interpretations. A conclusive video allows the court to know what happened and decide the legal consequences. A video that is ambiguous or not wholly clear can be relied on only for the facts that can be established beyond reasonable question. And I understand that when you watch this body cam video, it's dark. It's obscured because the camera's right here and Sergeant Smith's doing this. And so this isn't a video in which we can- This isn't like the case where the defendant says, I didn't get up and charge at the police officer and this court says, well, sure you did. We watched the video. We saw you get tased. We saw you get up. That's not this case. You cannot tell conclusively as a matter of law what happened during that three-second encounter. And that suggests that qualified immunity has not been pierced. Your Honor, I believe what that suggests is that that's a question of fact for the jury to resolve. And once the jury resolves that question, then the court can make its qualified immunity decision. But if a jury looks at this and says, I think that a reasonable officer would have noticed that Mr. Brummett was unconscious, then qualified immunity does not apply because he's violated a clearly established right. But if the jury goes the other way, well, then the court says, well, a reasonable officer could not have found that. The jury tells us that. And so now I know that qualified immunity applies. But we can't make that decision without the jury. It's a fact question. Thank you. So, Your Honor, unless there are other questions, I think I'll see you. I do have one follow-up question. On the clearly established right, you were beginning to tell us at the beginning of your So in the Becker case, and in the Johnson case, and in the Abbott case, they all use the following language. It has been clearly established since blank year, depending on which case it is, that a police officer cannot continue to use force once the subject is subdued. And so the question of fact that underlies that question is, was Mr. Brummett subdued? And the secondary question, would a reasonable officer have known he was subdued when he exercised the additional force? Thank you. Thank you. Thank you, Your Honor. Mr. Caruso. Thank you, Your Honor. Just a couple of brief points.  to find that there's no dispute of material fact. The parties through the briefing made clear that they agree on the material facts. Sergeant Smith's approach, there's the verbal exchange you see on the video. Mr. Brummett struck Sergeant Smith, and Sergeant Smith responded with his use of force of four strikes in two to three seconds. And again, Mr. Brummett asked this court to find that reasonableness, a question about whether it's reasonable that Sergeant Smith did not perceive the unconsciousness and send that to a jury. Again, that's incorrect because reasonableness is a legal conclusion. But what it does do is that's a concession that reasonable minds could disagree on the reasonableness of what occurred here. And because reasonable minds could disagree on whether Sergeant Smith's actions were reasonable or unreasonable, that means qualified immunity applies. Unless there are no other questions, thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.